Gene **LANGNESS**, Plaintiff,

v.

**FERNSTROM STORAGE & VAN COMPANY**, a foreign corporation, and **Harry Peairs**, Defendants.

Civ. No. 4196.

United States District Court
D. North Dakota,
Southeastern Division.

April 26, 1966.

Donald R. Hansen, of Nilles, Oehlert, Hansen, Selbo & Magill, Fargo, N. D., for plaintiff.

Harold A. Dronen, of Tenneson, Serkland, Lundberg & Erickson, Fargo, N. D., for defendants.

REGISTER, Chief Judge.

Pursuant to Rule 12 of the Federal Rules of Civil Procedure Defendant's counsel has served and filed a Motion to Dismiss, premised on the grounds that (a) the Court lacks jurisdiction over

1. Holmes, The Common Law, p. 35.

the Defendants, (b) there has been insufficiency of process, and (c) there has been insufficiency of service of process. The matter has been fully briefed and is submitted without oral argument, by virtue of the provisions of Rule V of the rules of this Court.

This is a personal injury action wherein the Plaintiff alleges that he is a citizen of the State of North Dakota and that the Defendants are citizens of the State of Illinois. Substituted service upon the Defendants was made pursuant to the provisions of Section 39–01–11, ND CC. That statute provides as follows:

"Nonresident motor vehicle user—Service upon.—The use and operation by a resident of this state or his agent, or by a nonresident or his agent, of a motor vehicle upon or over the highways of this state shall be deemed an appointment by such resident when he has been absent from this state continuously for six months or more following an accident or by such nonresident at any time, of the highway commissioner of this state to be his true and lawful attorney upon whom may be served all legal process in any action or proceeding against him growing out of the use or operation of the motor vehicle resulting in damages or loss to person or property, whether the damage or loss occurs upon a public highway or upon public or private property, and such use or operation shall constitute an agreement that any such process in any action against him which is so served shall have the same legal force and effect as if served upon him personally, or, in case of his death, that such process shall have the same legal force and effect as if served upon the administrator of his estate. Service of the summons in such case may be made by delivering a copy thereof to the highway commissioner together with a fee of two dollars."

No claim is made of any irregularity or insufficiency in the mechanics of the service under the statute involved. It is Defendant's assertion that said Section 39–01–11 is inapplicable to the facts of this case, as alleged by Plaintiff in his complaint, and that therefore any process attempted under such Section is invalid and void.

Most, if not all the states have nonresident motorist statutes somewhat similar to that of North Dakota. All have the same primary purpose—that is, to grant local residents access to local courts for the bringing of suits against nonresident tortfeasors covered by such statutes. As stated by Chief Justice Grimson of the Supreme Court of North Dakota in Austinson v. Kilpatrick et al., 82 N.W.2d 388, 392 (1957), the purpose of the subject statute is " * * * to give the resident of the state the same protection against nonresident drivers of automobiles on the highways as against resident drivers." Such statutes are remedial in nature, providing the procedure for acquiring jurisdiction of the parties. *Austinson*, supra, at page 392.

Statutes similar to that under consideration here have been held to be constitutional, providing they contain provisions which, if complied with, will result in a reasonable probability that the defendant will be afforded actual notice of the suit. See: Hess v. Pawloski, 274 U.S. 352, 47 S.Ct. 632, 71 L.Ed. 1091; Wuchter v. Pizzutti, 276 U.S. 13, 48 S.Ct. 259, 72 L.Ed. 446, and Berg v. Burke et al., 77 N.D. 913, 46 N.W.2d 786. However, the statute, being one in derogation of the common law, must be strictly construed. Simmons v. Broomfield, D.C. W.D.Ark., 163 F.Supp. 268, 273.

The precise question here to be determined does not appear to have been considered by the North Dakota Supreme Court. A duty is thus imposed upon this Court to predict or forecast what that North Dakota court would hold under circumstances similar to those present in this case. Homolla v. Gluck, 8 Cir., 248 F.2d 731, 734, and Nugent v. General Insurance Co. of America, 8 Cir., 253 F.2d 800.

Having in mind the quoted statute, the purpose thereof as expressed by the Supreme Court of North Dakota in *Austin-*

*son,* supra, and the aforementioned principles of law, we turn to the facts pertinent to this discussion, as disclosed by Plaintiff's complaint.

On the date of the accident Plaintiff was employed by the Defendants to assist in the unloading of certain equipment from a vehicle owned by the corporate Defendant and operated by the individual Defendant, an agent of Fernstrom Storage & Van Company. The vehicle, a truck transporting goods in interstate commerce, had traveled into North Dakota over public highways and, at the time of the accident, was parked along the curbline of a city street in Fargo, for the purpose of unloading its cargo. A ramp was placed from the side of the bed of the truck down to the sidewalk, and a large and heavy piece of IBM equipment was in the process of being guided down said ramp by the Plaintiff and others when it gained momentum and pinned Plaintiff's wrist between it and a brick wall, thereby allegedly seriously injuring Plaintiff.

Upon these facts the Plaintiff asserts that the truck was being "used," as that word is employed in Section 39–01–11, NDCC, and that therefore the Defendants are amenable to process as was here made.

It is alleged by Plaintiff, and it appears conceded by the Defendants, that sometime prior to the accident the truck involved was "used and operated" upon the highways of this state. Therefore, according to the statute, the highway commissioner was deemed appointed as the person upon whom process could be served for the purposes therein stated. The statute continues by providing that such process may be made upon the highway commissioner " * * * in any action or proceeding against (the nonresident) *growing out of the use or operation* of the motor vehicle * * *" (Emphasis added.)

Did, then, Plaintiff's injuries and damages "grow out of" the "use" of the Defendant's truck in this case? In the Court's opinion, they did not.

Plaintiff cites the New York cases of Aranzullo v. Collins Packing Company, 18 A.D.2d 1068, 239 N.Y.S.2d 398, and Landolphi v. Wilhelmsen, 39 Misc.2d 950, 241 N.Y.S.2d 942, in support of his contention that an unloading activity is encompassed within the word "use" as contained in Section 39–01–11. These cases, however, are distinguishable—and therefore not persuasive—in that a negligently defective condition of the vehicle itself, or a component part thereof, was alleged to be—and found to be—the cause of the respective plaintiff's injuries and damage. This distinguishing feature is found also in the cases of McDonald et al. v. Superior Court et al., 43 Cal.Rptr. 621, 275 P.2d 464, and Klein v. Wells et al., 194 Kan. 528, 400 P.2d 1002, which will be hereinafter discussed.

Generally, Plaintiff's allegations of claimed negligence upon which he bases the within action make no reference to the vehicle itself, or to any component part thereof, but instead refer to allegedly negligent omissions on the part of Defendants in failing to provide a safe place to work, safe unloading equipment, a suitable method of work, a sufficient number of competent fellow workers, and in failing to warn Plaintiff of the dangers inherent in his employment. In essence, Plaintiff's specifications of negligence are directed to the unloading process itself, and have no direct connection to any "use" of Defendant's vehicle, as such.

Clearly, Section 39–01–11 does not require that the vehicle itself must have caused the injury or loss, but only that its "use" (or operation) must have spawned the accident. Notwithstanding, this Court is of the opinion that there must be *some* relation of cause and effect between the "use" *of the vehicle* and the Plaintiff's damage. I am unable to perceive any direct causal relationship between the "use" of *Defendant's truck* and the cause of action alleged in Plaintiff's complaint.

While there are in many other states statutes which are quite similar to the North Dakota statute quoted, and the

opinions of many state courts which have construed such statutes indicate a similar objective, there is a sufficient difference in the wording and terminology thereof to require a careful study of each statute, and also a careful analysis of the factual situation existing in the reported cases before arriving at the conclusion that any such opinion is of help in construing the North Dakota statute. It also appears that some of the opinions cannot logically be reconciled with others. For the purpose of this memorandum, the Court has exhaustively researched opinions of courts which have construed or interpreted similar statutes. However, no purpose would be served by a lengthy discussion thereof; reference will be made to but a few.

In *McDonald*, supra, the statute under consideration by the Supreme Court of California embraced "any action or proceeding against said nonresident operator or nonresident owner *growing out of any accident or collision resulting from the operation of any motor vehicle upon the highways of this State* by himself or agent." (Emphasis added.) In this case, Plaintiff rented one of Defendant's trucks, which was in a defective condition, to transport a load of furniture; while unloading the truck, which was parked partially on the street and partially on the sidewalk, he was injured when a rack on the truck broke away from its support. The Court stated: "The obvious purpose of section 404 is to make amenable to suits in the courts of this state those nonresidents who may incur liability in the operation of motor vehicles upon the highways of this state. What constitutes operation within the meaning of the statute must be determined in the light of this objective." The Court held that: " * * * any accident occurring during the normal use of the vehicle *that is traceable to the negligent renting of it in a defective condition* for use upon the highways of this state is one resulting from its operation within the meaning of section 404." (Emphasis added.) As previously indicated, both

the law and the factual situation in *McDonald* are substantially different than the situation now confronting this Court.

In *Klein*, supra, the Supreme Court of Kansas construed the Kansas statute that was practically identical with the statute of California. The Kansas court stated the purpose of that statute in the same words as had the California court in *McDonald*, and added: "What constitutes 'operation' within the meaning of the statute must be determined in light of this objection." The Court held the statute was applicable to the facts in that case—in which the injuries received by plaintiff were during unloading operations during which plaintiff stepped through a concealed hole in the bed of the truck, suffering serious injuries. The present case is not similar factually to *Klein* and the portion of the statute requiring judicial interpretation ("operation" * * * "on the public highways") is not here applicable.

In 1965 the distinguished Senior Judge (former Chief Judge) of the United States District Court for the Eastern District of Pennsylvania had occasion to interpret a "similar" Pennsylvania statute in Wilson v. Armstrong, 242 F.Supp. 612. The proceedings covered by that statute included those "arising out of, or by reason of, any accident or collision occurring within the Commonwealth in which such motor vehicle is involved." It would appear that the word "involved" in the Pennsylvania law is at least equally as broad as the words "growing out of the use or operation of the motor vehicle" found in the North Dakota law. In *Wilson* the vehicle involved was a tractor-trailer transporting polo ponies over the Pennsylvania Turnpike; the tractor broke down, and the plaintiff unloaded one of the ponies and rode it to a nearby service station to get needed parts. On the way the pony threw him and he received serious injuries. While, of course, this factual situation is not comparable to that here existing, the Court's comments and its statement of the applicable

general rule are of interest. The Court said, at page 613, 242 F.Supp.:

"The most that can be said in support of the substituted service in this case is that the use of the highway by the motor vehicle in reaching the place where it broke down and its presence on the highway when the plaintiff's accident occurred were factors without which the accident in question would not have occurred. That is not enough.

"Although the statute does not provide that the motor vehicle or its operation must have caused the accident but only that it be involved in it, I think that there must be at least something in the nature of a relationship of cause and effect between the operation of the motor vehicle or its presence at the place of the accident and the plaintiff's injury."

In Hayashida v. Second Judicial District Court, 76 Nev. 433, 357 P.2d 117, the Supreme Court of Nevada was required to interpret a "similar" statute of that state, as applied to the facts therein existing. That statute referred to service of such legal process "in any action or proceeding * * * growing out of such use * * *." However, "such use" was construed as referring to a prior portion of the same paragraph, which was: "The use and operation of a motor vehicle over the public roads, streets or highways in the State of Nevada," and hence was much more restrictive than the North Dakota law. The Court's discussion of some of the cases hereinbefore cited, and its reasoning, is of interest, as is the case of Brauer Machine & Supply Co. v. Parkhill Truck Co., 383 Ill. 569, 50 N.E.2d 836, 148 A.L.R. 1208, therein cited.

Another case called to the attention of the Court is Acuff v. Service Welding & Machine Company, 141 F.Supp. 294, in which the federal district court construed a Tennessee statute "similar" to the Pennsylvania statute considered in *Wilson*, supra. Within the purview of the Tennessee statute is "process in any civil action brought by any person against him, arising out of any accident or injury occurring in this state in which such vehicle is involved." Thus the place where the accident happened (on the highway, on public or private property) is not expressly limited, and the word used ("involved") is the same as that used in the Pennsylvania statute (*Wilson*, supra). In *Acuff* the motor vehicle involved was a tractor-trailer unit, which had arrived at the unloading yard of Gulf Refining Company and was there at rest for unloading of cargo. Plaintiff was on the flat-top, engaged in unloading, when unexpected movement of a tank rolled over him and injured him, and one of his feet became caught in a depression or hole where the floor of the flat-top had rotted. Plaintiff contended the defendant was negligent in sending the trailer onto the highways of Tennessee in a defective condition when it was foreseeable that the defect would cause injury to unloaders. After quoting the relevant provisions of the statute, the Court said, at page 295, 141 F.Supp:

"Certain provisions in the foregoing stand out as giving the keys to an answer. First, in return for the privilege of operating a motor vehicle upon the highways of the state, the nonresident motorist agrees to be amenable to substituted service. Second, as a condition of this agreement, the accident or injury which occurred must have been one in which the motor vehicle so operated was involved.

"Here the implication is that the nonresident and the vehicle must have united in some transgression, theoretically speaking. The nature of the transgression is not expressed in the statute. However, as it has been construed, the statute implies that the injury sustained or the accident which occurred must have had some causal relation to traffic upon a highway or upon premises accessible to users of the highway."

See also Ellis v. Georgia Marble Co., 191 Tenn. 229, 232 S.W.2d 45.

Due in part to the fact that Plaintiff, in his brief, states the issue to be: "Does the language ·growing out of the *use*

or operation of a motor vehicle' of section 39–01–11, N.D.C.C. encompass the unloading of a motor vehicle?", this Court wishes to explicitly state that this opinion does not purport to pass upon such question as stated. This opinion is necessarily limited and restricted to the factual situation existing herein. It may very well be that a contrary conclusion could and would be made in the light of a different fact situation, even though the cause of action was based upon an accident occurring during unloading operations, which conclusion would be consistent with the reasoning of the Court in this case.

Without doubt, the *purpose* of the "use" of Defendant's vehicle in this case was to transport certain IBM equipment to its destination in North Dakota, and it was within the contemplation of both shipper and trucker that delivery should be made of said cargo. However, prior to the accident involved, the truck had arrived at its destination, had stopped, and was parked at the curb. The injuries to Plaintiff are not claimed to have been a proximate result of any defective or improper condition of any component part of the truck being used in the process of unloading the machine. The injuries are alleged to have been suffered as a result of the pinning of Plaintiff's wrist between the IBM machine and the wall of the building into which such machine was to be placed. Obviously, the accident occurred off of, and away from, said truck and all integral parts thereof, after the machine had been removed from the truck.

Should this Court adopt the reasoning advocated by Plaintiff—which would be necessary to a holding that the statute is here applicable—it would appear that a logical extension thereof would lead to results far beyond the intention or contemplation of the Legislative Assembly in the passage of said statute.

It being the opinion of this Court that the accident, from which the cause of action alleged in Plaintiff's complaint arose, did not "grow out of the use or operation" of the motor vehicle involved, within the meaning of the applicable statute, and that therefore the defendants are not subject to service of process as provided by Section 31–01–11, NDCC, it is

Ordered that Defendant's Motion to Dismiss be, and the same hereby is, in all things, granted, for the reason that this Court is without jurisdiction of the parties hereto; and it is further

Ordered that the within action and complaint be, in all things, dismissed, without costs.